```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION
```

LOURDES C. ALCALA and            §
ROLAND ALCALA,                   §
                                 §
        Plaintiffs,              §
                                 §
v.                               §      CIVIL ACTION NO. H-09-2113
                                 §
DEUTSCHE BANK NATIONAL           §
TRUST COMPANY,                   §
                                 §
        Defendant.               §

## MEMORANDUM OPINION

Pending before the court[1] is Defendant's Motion for Summary Judgment (Docket Entry No. 10). The court has considered the motion, Plaintiff's response, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's motion.

### I.  Case Background

Plaintiffs filed this real property action requesting that the assignment of the lien on their home "be cancelled, declared of no force and effect[,] and removed as a cloud on [their] title."[2] They also seek a declaration that Defendant is not the proper owner and holder of the Texas Home Equity Note ("Note") secured by a lien on their homestead.[3]

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 9.

[2] Docket Entry No. 1-1, Ex. A-2 to Defendant's Notice of Removal, Pl.'s Original Pet., p. 4.

[3] Id.

**A.   Factual Background**

On April 14, 2006, Plaintiffs executed the Note in the amount of $216,000.[4] Long Beach Mortgage Company ("LBMC") was the lender on the Note.[5] The Note explicitly allowed LBMC to transfer the Note and the right to receive payment thereunder.[6] A contemporaneously executed Texas Home Equity Security Instrument ("Security Instrument") secured the repayment of the debt with interest by granting a lien on Plaintiffs' home.[7] The Security Instrument confirmed the right to sell the Note (together with the Security Instrument) and authorized foreclosure as a remedy in case of default.[8] On April 24, 2006, Fidelity National Title recorded the Security Instrument in the real property records of Harris County, Texas.[9]

In July 2006, Washington Mutual Bank ("WaMu"), which owned all of the outstanding stock of LBMC, converted LBMC into a limited liability company with WaMu as the sole member.[10] WaMu then merged

---

[4]   See Docket Entry No. 10-1, Ex. A to Def.'s Mot. for Summ. J., Note.

[5]   Id. at p. 1.

[6]   Id.

[7]   See Docket Entry No. 10-2, Ex. B to Def.'s Mot. for Summ. J., Tex. Home Equity Sec. Instrument, p. 1.

[8]   Id. at pp. 5, 6.

[9]   See id.

[10]  Docket Entry No. 10-7, Ex. G to Def.'s Mot. for Summ. J., Aff. of Harold Galo, p. 1; Docket Entry No. 10-10, Ex. J to Def.'s Mot. for Summ. J., Aff. of William Lynch, p. 1.

Long Beach Mortgage, LLC, into a trust with WaMu as the beneficiary and, after resignation of the administrative trustee, as the sole trustee; the result was that WaMu was successor in interest to LBMC.[11]

In August 2008, Plaintiffs and Defendant, "as Trustee for Long Beach Mortgage Loan Trust 2006-5,"[12] executed a Loan Modification Agreement ("Agreement").[13] At that time, Plaintiffs were in arrears on loan repayment.[14] The unpaid principle balance was $213,643.73, and unpaid interest, costs, and expenses totaled $12,194,43.[15] The Agreement lowered the interest rate and added the past due amount to the indebtedness.[16] The unmodified portions of the Note and Security Instrument remained in effect.[17]

A month later, the Office of Thrift Supervision closed WaMu

---

[11] Docket Entry No. 10-7, Ex. G to Def.'s Mot. for Summ. J., Aff. of Harold Galo, p. 1; Docket Entry No. 10-10, Ex. J to Def.'s Mot. for Summ. J., Aff. of William Lynch, pp. 1-2.

[12] It appears that Defendant served as custodian/trustee for the LBMC Trust in 2008 before Chase purchased the Note. See Docket Entry No. 10-3, Ex. C to Def.'s Mot. for Summ. J., Loan Modification Agreement ("Agreement"), p. 1; Docket Entry No. 10-5, Ex. E to Def.'s Mot. for Summ. J., Assignment of Lien; Docket Entry No. 10-6, Ex. F to Def.'s Mot. for Summ. J., Aff. of Ronaldo Reyes, p. 2. Defendant released the Note, Security Instrument, and Agreement to Chase several months prior to the Assignment of Lien executed by Defendant and Chase. See Docket Entry No. 10-6, Ex. F to Def.'s Mot. for Summ. J., Aff. of Ronaldo Reyes, p. 2. While mildly confusing, this has no bearing on the change of ownership of the note.

[13] See Docket Entry No. 10-3, Ex. C to Def.'s Mot. for Summ. J., Agreement.

[14] See id. at p. 1.

[15] Id. at pp. 2-3.

[16] Id. at p. 3.

[17] Id. at p. 4.

and named the Federal Deposit Insurance Corporation ("FDIC") as receiver.[18] The FDIC entered into a Purchase and Assumption Agreement with JPMorgan Chase Bank, N.A., ("Chase") by which Chase acquired all of WaMu's loans and loan commitments.[19]

On January 6, 2009, Chase, operating under the name of Washington Mutual Home Loans, sent Plaintiffs a Notice of Intent to Accelerate and Demand for Payment via certified mail.[20] Representing Chase, the Harvey Law Group sent Plaintiffs a Notice of Acceleration on March 4, 2009.[21]

On the following day, Chase and Defendant entered an Assignment of Lien that transferred to Defendant, as Trustee for Long Beach Mortgage Loan Trust 2006-5, the "[N]ote, together with all liens, and any superior title, held by the undersigned securing the payment thereof."[22] Chase is the servicing agent for Defendant with regard to Plaintiff's loan.[23] Plaintiffs failed to cure the

---

[18] Docket Entry No. 10-11, Ex. K to Def.'s Mot. for Summ. J., Aff. of the FDIC.

[19] Id.

[20] See Docket Entry No. 10-4, Ex. D to Def.'s Mot. for Summ. J., Notice of Intent to Accelerate and Demand for Payment; Docket Entry No. 10-6, Ex. F to Def.'s Mot. for Summ. J., Aff. of Ronaldo Reyes, p. 1-2; Docket Entry No. 10-7, Ex. G to Def.'s Mot. for Summ. J., Aff. of Harold Galo, p. 2.

[21] See Docket Entry No. 10-8, Ex. H to Def.'s Mot. for Summ. J., Notice of Acceleration; Docket Entry No. 10-9, Ex. I to Def.'s Mot. for Summ. J., Aff. of Kelly Harvey.

[22] See Docket Entry No. 10-5, Ex. E to Def.'s Mot. for Summ. J., Assignment of Lien, p. 1.

[23] Docket Entry No. 10-6, Ex. F to Def.'s Mot. for Summ. J., Aff. of Ronaldo Reyes, p. 1; Docket Entry No. 10-7, Ex. G to Def.'s Mot. for Summ. J., Aff. of Harold Galo, p. 1.

default.[24] Thus, all sums due under the Note were accelerated, and foreclosure proceedings were begun.[25]

**B. Procedural Background**

On May 22, 2009, Plaintiffs filed this suit in Texas state court.[26] Plaintiffs served Defendant on June 2, 2009, and Defendant removed the action to this court on July 2, 2009.[27] After the parties consented to proceed before the undersigned, Defendant filed a motion for summary judgment.[28] The court now addresses Defendant's motion.

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable

---

[24] Docket Entry No. 10-6, Ex. F to Def.'s Mot. for Summ. J., Aff. of Ronaldo Reyes, p. 2; Docket Entry No. 10-7, Ex. G to Def.'s Mot. for Summ. J., Aff. of Harold Galo, p. 2.

[25] Docket Entry No. 10-6, Ex. F to Def.'s Mot. for Summ. J., Aff. of Ronaldo Reyes, p. 2; Docket Entry No. 10-7, Ex. G to Def.'s Mot. for Summ. J., Aff. of Harold Galo, p. 2; see also Docket Entry No. 10, Def.'s Mot. for Summ. J., p. 1 (stating that Defendant had begun foreclosure proceedings in state court when Plaintiffs brought this suit to remove a cloud from title to the property).

[26] See Docket Entry No. 1-1, Ex. A-2 to Def.'s Notice of Removal.

[27] See Docket Entry No. 1, Def.'s Notice of Removal, p. 1.

[28] See Docket Entry No. 9, Consent to Proceed Before the Magis. Judge; Docket Entry No. 10, Def.'s Mot. for Summ. J.

substantive law as critical to the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. <u>Celotex Corp.</u>, 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to

be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. Analysis

Defendant seeks summary judgment on Plaintiffs' suit to remove a cloud from title to real property and on their declaratory judgment action. Defendant also moves the court to grant summary judgment on its counterclaim for foreclosure.

**A.  Plaintiffs' Causes of Action**

A suit to remove a cloud from title to property (also known as a suit to quiet title) is an equitable remedy to clarify ownership by removing invalid claims. See Ford v. Exxon Mobil Chem. Co., 235 S.W.3d 615, 618 (Tex. 2007)(referring to an action to quiet title as "an equitable action to remove cloud on title"); Bell v. Ott, 606 S.W.2d 942, 952 (Tex. Civ. App.–Waco 1980, writ ref'd n.r.e.)(stating that "[the] principal issue in a suit to quiet title is as to the existence of a cloud that equity will remove"). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." Hahn v. Love, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist. 2009, pet. denied)(quoting Angell v. Bailey, 225 S.W.3d 834, 838 n.6 (Tex. App.—El Paso 2007, no pet.)). Equity requires that, upon proof of invalidity, the cloud on title be removed. Hahn, 321 S.W.3d at 531. The plaintiff bears the burden of establishing his superior equity and right to relief. Id.; see also Fricks v. Hancock, 45 S.W.3d 322, 327 (Tex. App.–Corpus Christi 2001, no pet.)(explaining that a "plaintiff in a suit to quiet title must prove and recover on the strength of his own title").

Here, Plaintiffs claim that the Assignment of Lien is invalid and Defendant cannot otherwise prove that it is the owner of the Note. In support of its motion for summary judgment, Defendant submitted documents tracing the provenance of the Note from its

inception to Defendant's ownership. The documents and affidavit testimony establish Defendant's true ownership.

In response, Plaintiffs have failed to produce any evidence calling into question Defendant's evidence or challenging Defendant's ownership. The only evidence submitted by Plaintiffs is the declaration of Plaintiff Roland Alcala, which is not based on personal knowledge but, rather, is founded on speculation, argument, and personal belief. Plaintiff Roland Alcala affirmed that he and his wife are the owners of the property at issue and that it is their homestead. In relevant part, the remainder of his declaration states:

> 5.   The Defendant and Counter-Plaintiff Deutsche Bank continues to fail to prove to me that it is in fact the owner of the Promissory Note and fails to stipulate that is [sic] the creditor in this case and that a contract exists between me and Deutsche Bank. Upon information and belief, if Deutsche Bank represents the true creditor, then it must submit the required documentation with a true bill signed under perjury of law, full faith and credit stating exactly how much allegedly is owed and how much is allegedly paid. Deutsche Bank claims to represent a holder in due course of a debt instrument (See UCC 3-302). Deutsche Bank's implication that there are Creditor and Debtor. [sic] Upon information and belief, if Deutsche Bank represents a holder in due course of a true debt instrument, then have the said "holder" in due course state in plain English who the Creditor and Debtor is [sic]. Did Deutsche Bank represented [sic] in this case the "True Creditor" (See Black's Law Dictionary 6th Ed. "True") and/or represent the "Indorsee in Due Course" (See Black Law's [sic] Dictionary 6th Ed. "Indorsee in Due Course"). If Deutsche Bank does not stipulate for the record that they are the TRUE CREDITOR THEN I believe that Deutsche Bank has conducted a fraudulent, [sic] foreclosure, attempted collection, sale and/or attempted eviction.

> 6. Deutsche Bank failed to produce the Genuine and Original Promissory Note and [sic] not Defaced, Altered or Endorsed or Stamped "Without Recourse" and not separated from the Deed of Trust, to me for my examination. Though they have briefly shown the purported "True Copy", as they stated on their claim, they never allowed me to have it in my possession for any period for examination and validation. What we originally demanded for them to produce is the Genuine Original Promissory Note and not the "True Copy" of the said note as they have produced and stated.
>
> 5.[sic] Deutsche Bank has not produced the 2046 Balance Sheet as it relates to the original Loan. It shows the bank's ledgering of the account. It shows the off Balance Sheet entries and extinguishment of the Loan, which I understand and believe is a mandatory filing pursuant to title 12 U.S.C. 248 & 347.
>
> 6. [sic] Upon information and belief, Deutsche Bank also needs to produce the FAS 125, 133, 140, 5, 95. These will direct an auditor to the liability side of the Bank's books and also create the trail exactly where the money came from and where it went.

The relevance of Plaintiff Roland Alcala's rambling declaration is unclear. For example, 12 U.S.C. §§ 248, 347 are statutes governing the federal reserve system, which appear to have no bearing on this lawsuit. Also, Plaintiffs fail to demonstrate how the "2046 Balance Sheet" and the "FAS 125, 133, 140, 5, 95"[29] would demonstrate the invalidity of the Assignment of Lien. Plaintiffs' entire lawsuit is based on the allegation that the Assignment of Lien was invalid, and, therefore, Defendant's claim to Plaintiffs' property is a cloud on their title. Nothing in the

---

[29] Presumably, Plaintiff Roland Alcala is referencing financial accounting standards.

declaration contradicts Defendant's proof of ownership of the Note or suggests Plaintiffs' superior right to title.

More importantly, Defendant's evidence fully tracks the ownership of the Note into its possession.  Therefore, Plaintiffs have not met their summary judgment burden of raising an issue of material fact precluding judgment as a matter of law in favor of Defendant on both Plaintiffs' suit to remove a cloud from title to real property and their request for a declaration that Defendant is not the proper owner of the Note.  Summary judgment in favor of Defendant on Plaintiffs' claims is therefore appropriate.

**B.  Defendant's Cause of Action**

The Constitution of the State of Texas allows foreclosure of a lien against a homestead securing an extension of credit only upon a court order.  Tex. Const. art. XVI, § 50(a)(6)(D).

In its counterclaim, Defendant requested an order of foreclosure pursuant to the state constitution.  It now seeks summary judgment on the counterclaim and requests an order allowing foreclosure pursuant to the Security Instrument and the Texas Property Code.

Defendant has presented evidence of a valid Note, Security Instrument, and Agreement concerning Plaintiffs' homestead property.  Defendant has also shown that the Note holder provided Plaintiffs' notice of default and intent to accelerate by certified mail and also provided them with notice of acceleration.  Pursuant

to the Security Instrument, Defendant possesses the power of sale upon Plaintiffs' failure to cure the default. The evidence proves that Plaintiffs did not cure the default. Therefore, Defendant has met all conditions precedent to the exercise of that right. Plaintiffs present no contrary evidence. Other than the challenge to Defendant's ownership of the Note, which the court has rejected, Plaintiffs do not attack Defendant's right to enforce its lien on their property through foreclosure.

As Defendant has proven that it complied with the requirements of the Note, the Security Instrument, and Texas law, it is entitled to force the sale of Plaintiffs' homestead in order to recover the indebtedness owed to it. Defendant must comply with the procedures outlined in the Security Instrument and Texas Property Code § 51.002.

## IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendant's Motion for Summary Judgment.

**SIGNED** in Houston, Texas, this 2nd day of March, 2011.

Nancy K. Johnson
United States Magistrate Judge